The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Paul M. SANDOVAL,
Defendant-Appellant.

No. 83CA1339.

Colorado Court of Appeals,
Div. I.

June 27, 1985.

Rehearing Denied July 25, 1985.

Certiorari Denied Dec. 16, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia Nimerichter, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Paul M. Sandoval, was convicted of criminal mischief involving damage of more than $200 but less than $10,000. On appeal his principal contention of error is that the trial court erred in denying his challenge for cause to a prospective juror who stated he resented having to serve on the jury, who blamed defendant for disrupting his vacation plans,

and who stated that he believed the defendant was guilty merely because he had been accused of the crime. We reverse.

During jury selection when one venireman was being interrogated by the prosecutor, he indicated his reluctance to serve on the jury and stated that he thought these feelings would affect how he would deliberate and listen to testimony. When pressed by the district attorney as to whose side of the case would be affected by this attitude, he stated that he "guessed" he would be a fair juror, but when asked if he understood that fairness applies both to the defendant and to the state he responded:

"The defendant ain't fair to me because I have had him wreck my vacation to come over here."

When it was the turn of defendant's counsel to question him, the following took place:

"Q: (by defense counsel) You know as well as I do that I am almost scared of you right now.

A: Good. I am glad.

Q: You just said on questioning ... that you feel that my client Mr. Sandoval has caused you to—sort of messed up your vacation.

A: Right.

Q: ... You must understand ... the prosecution files the charge. That doesn't mean anything. Mr. Sandoval had pled not guilty. He said, 'I didn't do it.' So, do you think it's fair to blame him for something that the system had done to him? Do you think its fair to blame him for this trial today?

A: Well, if he committed it he's guilty; ain't he?

Q: You figure anybody who comes into court charged with a crime is guilty then? I mean we wouldn't go this far if they weren't guilty so far as you are concerned?

A: Well—

Q: You feel that way?

A: Yeah, I feel this way.

Q: Are you saying that to get out of your jury duty or because you believe it?

A: Well, if he committed a crime he wouldn't be here; would he?[sic]

Q: So, you feel that anybody that comes—

A: That's right.

Q: —comes into this courtroom and sits at this table as a defendant—

A: He had to commit the crime."

Defense counsel immediately challenged for cause.

Before ruling on the challenge, the court gave the district attorney an opportunity to rehabilitate the prospective juror. The district attorney asked the prospective juror if he understood that instructions would be given to him and that he would have to follow these instructions. He responded that he would follow the instructions. When asked whether he could put aside preconceived notions, he responded that he did not understand. Then he was asked:

"Q: ... [W]ould you be able to put aside your resentment of being here in order to sit fairly as a juror? In other words to give both the State and the defendant a fair trial?

A: I guess I would."

The trial court then intervened and the following colloquy took place:

"THE COURT: ... you sat on a jury before and I told you that the indictment or charge is not evidence and you said you would follow my instructions; is that correct?

A: Yes.

THE COURT: I am also going to tell you he is presumed innocent until they find him guilty. Would you follow those instructions?

A: I told you I would follow those."

The court thereupon denied the challenge for cause.

Defense counsel asked additional questions, eliciting from the prospective juror his feelings that he just did not want to sit on the jury, and when asked whether he could put aside his personal feelings the juror responded, "I guess I can." Again he was asked if he could be fair and objective and keep an open mind until all the

evidence was presented, to which he responded, "I guess." Defense counsel concluded his questioning as follows:

"Q: Let me ask you straight to the point ... will you give Mr. Sandoval a fair trial after all the evidence is presented?

A: I will have to hear the case.

Q: That's not what I am asking you. Once the evidence is presented will you be fair and objective to Mr. Sandoval?

A: I guess I can.

Q: I'm sorry, you guess you can?

A: Yeah."

The challenge for cause was renewed and again denied. Before exercising his last peremptory challenge counsel sought unsuccessfully an additional challenge. Thereupon the defendant excused the juror in question with his last challenge.

■ The determination whether to deny a challenge for cause is within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of such discretion, *People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976). Nonetheless, appellate courts must not "abdicate their responsibility to ensure that requirements of fairness are fulfilled." *Morgan v. People*, 624 P.2d 1331 (Colo.1981).

■ In *Morgan, supra,* the supreme court recognized the general rule of trial court discretion, but stated that prospective jurors should be excused for cause if they repeatedly indicate that they will have difficulty applying instructions relating to the prosecution's burden of proof, thus making it appear doubtful that the instructions of the court as to the law would be followed.

Examining the voir dire of this particular prospective juror, we note that at no time did he clearly retreat from his position that he blamed the defendant for interrupting his vacation, and, while he did ostensibly indicate that he would follow the instructions of the court, his responses indicate that he was giving up his preconceived notions of defendant's guilt only grudgingly. Also, he did not directly retreat from his responses to defense counsel that he

was glad that counsel was "scared" of him as a juror because of his feelings that the defendant had interfered with his vacation.

While his answers to the two questions propounded by the court were not equivocal, the second answer to the court about whether he would follow instructions was somewhat antagonistic: "I told you I would follow those." And, even after the exchange with the court, when similar questions were asked by defense counsel, his answer to the questions about being fair remained equivocal, *i.e.,* "I guess I can."

■ The prospective juror's answer to the question from the court that he would follow its instructions is not dispositive. *See People v. McCrary, supra.* Other questions asked by both the prosecutor and the defense counsel indicate hostility to the defendant, tempered only by the potential juror's "guess" that he could be impartial. Under this circumstance, it should not be assumed that the juror could render an impartial verdict. *See People v. Brown*, 44 Colo.App. 397, 622 P.2d 573 (1980). *See also Maes v. District Court*, 180 Colo. 169, 503 P.2d 621 (1972). Because it was doubtful that he would be governed by the instructions of the court, we hold that the trial court abused its discretion in not excusing the prospective juror for cause.

The other contention of error is unlikely to arise on retrial and therefore it is not addressed.

The judgment is reversed, and the cause is remanded for a new trial.

VAN CISE and BABCOCK, JJ., concur.