The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Tyler N. LePAGE, Defendant–Appellant.

No. 09CA0676.

Colorado Court of Appeals,
Div. I.

Feb. 17, 2011.

John W. Suthers, Attorney General, Ryan A. Crane, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, James S. Hardy, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Tyler N. LePage, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault. We affirm.

## I. Background

LePage is serving a life sentence in the Sterling Correctional Facility. This case resulted from an incident that occurred there.

In July 2007, Department of Corrections officers at Sterling performed a strip search of LePage on the suspicion that he possessed a prohibited metal implement or tool. The officers handcuffed him, and attached a two-foot long tether to his handcuffs, for the purpose of controlling his movements.

After walking a short distance, LePage turned and head-butted at least one of the officers in the mouth, and kicked another officer before he was subdued. Following this incident, corrections officers found no metal implement on LePage.

LePage was charged with second degree assault. At trial, the court denied defense counsel's request to include third degree assault as a lesser included offense, but agreed to instruct the jury on the lesser included offense of obstruction of a peace officer. Prior to the parties' closing arguments, the trial judge read aloud fourteen jury instructions. Instructions No. 11 and 12 instructed the jury on the elements of second degree assault. Instruction No. 13 instructed the jury that if it was not satisfied beyond a reasonable doubt that LePage was guilty of second degree assault, it could find him guilty of the lesser offense of obstruction of a peace officer. Instruction No. 14 instructed the jury on the elements of the lesser included offense of obstruction of a peace officer. The trial court explained, "While you may find [LePage] not guilty of the crime charged or of the lesser-included offense, you may not find [LePage] guilty of more than one of the following offenses: Second-degree assault or obstruction of a peace officer." The jury received written copies of these fourteen instructions.

The trial court also advised the jury that it would receive two verdict forms, one reading "Jury Verdict Count 2 assault in the second degree" and the other "Jury Verdict Count 3. Obstruction of a peace officer."

Following the reading of the jury instructions and the advisement regarding the verdict forms, neither LePage's attorney nor the prosecutor asked to review the instructions and verdict forms before they were submitted to the jury.

On appeal, LePage contends the court gave the jury a verdict form for second degree assault, but did not give the jury a verdict form for obstruction of a peace officer. Instead, according to LePage, the jury mistakenly received a second verdict form titled "Jury Verdict Count Three, Assault in the Third Degree."

The jury convicted LePage of second degree assault, and the trial judge later adjudicated him a habitual offender based on his three prior felony convictions.

## II. Not Providing Verdict Form to Jury

LePage contends that the trial court committed reversible error when it did not provide the jury with a verdict form for the lesser included offense of obstruction of a peace officer. We disagree.

### A. State of the Record

██ Initially, we reject the People's contention that LePage has not shown that the jurors did not receive the proper verdict form. According to the People, the record shows only that the verdict form for obstruction of a peace officer was stapled to the tendered, but refused, jury instruction for

third degree assault. Thus, the People reason, LePage at most has demonstrated an error in stapling the instructions and verdict form.

In response, LePage asserts that the verdict form for obstruction of a peace officer stapled to the unnumbered jury instruction defining the elements of third degree assault—and apart from the tendered jury instructions and proper verdict form for second degree assault—establishes that the jury did not receive the proper verdict form. We agree with LePage.

■ It is the obligation of the party asserting error in a judgment to present a record that discloses that error, for a judgment is presumed to be correct until the contrary affirmatively appears.[1] *Schuster v. Zwicker*, 659 P.2d 687, 690 (Colo.1983). Further, "absent an affirmative showing by the prosecution that the certified record is not correct, we must accept the record on appeal as filed." *People v. Seacrist*, 874 P.2d 438, 442 (Colo.App.1993). Here, the record supports LePage's assertion that the jurors inadvertently did not receive the verdict form for obstruction of a peace officer.

### B. "Soft Transition" Language in Jury Instruction No. 13

LePage argues that the trial court's failure to provide a verdict form for obstruction of a peace officer rendered meaningless the instructions for that lesser included offense. Because we have no evidence that the jury did not consider whether LePage was guilty of the lesser included offense, we perceive no error.

■ Colorado is a "soft transition" jurisdiction, in which the jury need not unanimously acquit the defendant of the greater offense before considering the lesser included offenses. *People v. Richardson*, 184 P.3d 755, 768 (Colo.2008). In contrast, a "hard transition" jurisdiction requires a jury to return final verdicts on greater offenses before

returning verdicts on lesser included offenses. *Id.* In accordance with the "soft transition" approach, when there is a rational basis for the jury to convict the defendant on a lesser included offense, the trial court's failure to instruct on that offense constitutes reversible error. *People v. Pena*, 962 P.2d 285, 287 (Colo.App.1997).

Relying on *Pena*, LePage asserts that the omission of the proper jury verdict form equated to failing to instruct the jury on the lesser included offense of obstruction of a peace officer. LePage does not dispute that the trial court instructed the jury on the lesser included offense of obstruction of a peace officer. However, he asserts that omission of the correct verdict form rendered the jury incapable of returning a verdict on the lesser included offense, and that this omission equated to a failure to instruct the jury on the lesser included offense.

Here, LePage's argument presumes that the jury did not deliberate on whether LePage was guilty of the lesser included offense of obstruction of a peace officer. However, the record does not show whether the jury considered the lesser included offense.

Further, to the extent that LePage relies on *Pena* and *Richardson* to argue that the court erred when it did not instruct the jury on a lesser included offense, such reliance is misplaced for two reasons. First, the jury was instructed, orally and in writing, of the lesser included offense of obstruction of a peace officer. Second, Instruction No. 13 did not direct the jury to use a "hard transition" approach.

Here, the first sentence of Jury Instruction No. 13 initially suggests a "hard transition" approach: "If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense. . . ." However, read in the context of the complete instruction, this sentence does not mandate a "hard transition" approach.

---

1. C.A.R. 10(e) provides that the appellate court, on proper motion, may direct that an omission or misstatement in the record be corrected, and if necessary that a supplemental record be certified and transmitted. Even after an opinion has been issued by the court, it is still possible to remand the case in order to settle the record. *People v. Wolfe*, 9 P.3d 1137, 1140 (Colo.App. 1999). Here, neither party requested that the case be remanded to settle the record, and therefore, we do not address whether such action would have been appropriate.

The fourth paragraph of Instruction No. 13 contains "soft transition" language, and instructs the jury, "[I]f you decide that the prosecution has proven each of the elements of the crime charged or of a lesser included offense, you should find the defendant guilty of the offense proven." In sum, Instruction No. 13, read in its entirety, instructs the jury to consider the greater or lesser offenses in an order of its choosing, specifically, "the elements of the crime charged or of a lesser included offense." Accordingly, neither the record nor Instruction No. 13 affirmatively shows that the jury did not deliberate on whether LePage was guilty of the lesser included offense of obstruction of a peace officer.

### C. Omission of Correct Verdict Form

■ The parties agree that at trial defendant did not preserve an objection to the omission of the proper verdict form for the lesser included offense of obstruction of a peace officer. When there is no objection to either a jury instruction or the verdict form at trial, we review under a plain error standard. *People v. Guffie,* 749 P.2d 976 (Colo. App.1987). Plain error is error that is obvious and substantial and "so undermine[s] the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller,* 113 P.3d 743, 750 (Colo.2005); *People v. James,* 40 P.3d 36, 46 (Colo.App.2001). Plain error exists if there is a reasonable possibility that an erroneous instruction contributed to the defendant's conviction. *Id.*

■ In civil cases, we defer to jury verdicts where jurors have been properly instructed by the trial court and the record contains evidence to support the jury's findings. *Bohrer v. DeHart,* 961 P.2d 472, 475 (Colo.1998). An appellate court reviews the jury instructions, the jury verdict forms, and the evidence, and determines from the record whether there is competent evidence from which the jury logically could have reached its verdicts. *Id.* The defendant must show that the verdict forms contained errors which both affected a substantial right and cast serious doubt on the reliability of the jury's findings of guilt. *Id.*

LePage relies on cases in which a reviewing court found reversible error resulting from a trial court's failure to provide a jury with correct instructions. *See Pena,* 962 P.2d at 287 (trial court's failure to instruct the jury on a lesser included offense constituted reversible error, because there was a rational basis for the jury to convict on the lesser included offense); *People v. Jones,* 942 P.2d 1258, 1260–61 (Colo.App.1996) (where defendant was charged with second degree assault, the failure to instruct the jury on the lesser included offense of obstruction of a peace officer constituted reversible error).

However, contrary to LePage's argument, an incorrect verdict form does not equate to an incorrect jury instruction. Colorado's appellate courts have distinguished between incorrect jury instructions that result in reversible error, and incorrect verdict forms that do not. Where a trial court failed to provide a jury with correct verdict forms, the supreme court found that the error was harmless, because the trial court properly instructed the jury, and the verdict forms did not demonstrate that the jury ignored the court's instructions. *Bohrer,* 961 P.2d at 475.

No published Colorado criminal case directly addresses whether omission of a correct verdict form constitutes plain error. However, Colorado civil cases and criminal cases from other jurisdictions clarify when an incorrect verdict form results in reversible error.

### 1. Colorado Civil Cases

Colorado civil cases demonstrate that an incorrect verdict form, considered in the context of correct jury instructions, is not necessarily reversible error. Because the errors in these cases were found to be harmless, they would not have constituted plain error if that standard had applied. For example, a division of this court found that a jury verdict based on a legally correct instruction did not warrant reversal, even if the verdict form "might have been more appropriately worded." *Technical Computer Servs., Inc. v. Buckley,* 844 P.2d 1249, 1253 (Colo.App. 1992). Similarly, in *Bohrer,* the supreme court reinstated the jury's verdict and the

judgment of the district court, because "[w]e defer to jury verdicts where jurors have been properly instructed and the record contains evidence to support the jury's findings." 961 P.2d at 477. In that case, the verdict forms did not strictly comply with the applicable statute; however, the trial court properly instructed the jury, and therefore, the supreme court presumed that the jury followed those instructions. *Id.* at 476.

Similarly, in another civil case, the supreme court held that where verdict forms invited inconsistent jury verdicts, but the record demonstrated that no such inconsistencies actually occurred, the errors in the verdict forms were harmless. *Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1259 (Colo. 1994). Under these cases, reversible error did not occur where the trial court correctly instructed the jury and the jury followed those instructions, regardless of errors in the verdict forms.

Here, as in *Buckley, Bohrer,* and *Hock,* the jury received correct instructions but no verdict form on the obstruction of a peace officer charge. The trial court instructed the jury on the offense charged and the lesser included offense, and the record does not show that the jury misunderstood or did not follow those instructions. There is no evidence that the jury did not consider the lesser included offense, as it was instructed, despite lacking a verdict form for that offense.

### 2. Out-of-State Cases

Other states have addressed whether an error or omission in a verdict form constitutes reversible error. In *Morris v. State*, 658 So.2d 155, 156 (Fla.Dist.Ct.App.1995), the defendant argued that the trial court committed reversible error when it instructed the jury on a lesser included offense, but omitted the verdict form for that offense. The court concluded that the defendant failed to preserve his appeal of such error, but that even if he had preserved his appeal, the error would be harmless. *Id.* The court reasoned that the verdict form error was "invited error," because the defendant approved of the verdict form prior to its submission to the jury. *Id.* Also, the verdict form was for a lesser included offense "two steps" removed

from the offense charged, thereby triggering harmless error review in accordance with Florida law. *Id.* at 157.

In another Florida case, where a trial court properly instructed the jury on a lesser included offense, but the jury's verdict form for that offense had a typographical omission, the reviewing court held that the error was harmless. *Delvalle v. State*, 653 So.2d 1078, 1079 (Fla.Dist.Ct.App.1995). The court reasoned that the trial court properly instructed the jury, and that defense counsel approved of the verdict form prior to its submission to the jury. *Id.*

Here, as in the two Florida cases, the trial court instructed the jury on the lesser included offense, but omitted the verdict form for that offense. The court instructed the jury both orally and in writing on obstruction of a peace officer, and the jurors received the written copy of this instruction. There is no evidence that the jury did not follow those instructions. Nor does the record show that defense counsel asked to review the jury instructions and verdict forms before they were given to the jury. Therefore, any omission or error in the relevant verdict form was not plain error.

Similarly, a Georgia court held that where a trial court did not provide the jury with a separate verdict form for the defendant's lesser included offense, there was no reversible error. *King v. State*, 178 Ga.App. 343, 343 S.E.2d 401, 403 (1986). The court reasoned that even if the defendant had a right to such a verdict form, "an omission of a fourth verdict form would be harmless error because the jury found beyond a reasonable doubt that [the charged offense] had been committed by [the defendant]." *Id.*

The reasoning of *King* applies to the present case. Here, as discussed in part II.B above, the jury found LePage guilty of the charged offense of second degree assault. There is no evidence that the omission of the proper verdict form caused the jury not to deliberate on the lesser offense. As a result, the omission of the verdict form for the lesser offense was not plain error.

The cases from Florida and Georgia demonstrate that where a jury receives correct

instructions and properly follows those instructions, certain errors in a verdict form do not constitute plain error.

In contrast to those cases, other states have held that an incorrect verdict form paired with incorrect or ambiguous jury instructions constitutes reversible error. For example, the Louisiana Court of Appeal observed that, "If the trial court submits a verdict form to the jury with misleading or confusing interrogatories ... such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error." *Doyle v. Picadilly Cafeterias*, 576 So.2d 1143, 1153 (La.Ct.App.1991). Where jury instructions were "ambiguous and confusing" and the record demonstrated the jurors' confusion over their options, the reviewing court held that omission of a verdict form for a lesser included offense constituted fundamental error. *State v. Knorr*, 186 Ariz. 300, 921 P.2d 703, 706 (Ariz.Ct.App. 1996).

Here, the jury received correct, unambiguous instructions on the charged and lesser included offense. The record shows that during the jury's deliberations, it requested to view a certain video again, and the trial court granted that request. This request suggests that the jury understood and exercised its right to make requests of the trial court. The record does not demonstrate that the jury instructions confused the jury. Thus, this case is distinguishable from *Doyle* and *Knorr*, where fundamental error occurred because the trial court either failed to instruct the jury or delivered confusing instructions on the lesser included offense.

These out-of-state cases demonstrate that errors in verdict forms must be considered in the context of jury instructions, specifically, whether the jury was properly or improperly instructed on the charged and lesser offenses.

A third category of cases presents situations where serious error on a verdict form results in reversible trial court error. For example, where a verdict form for a lesser included offense did not include an option of "not guilty," but was otherwise correct, a Texas court remanded the case for analysis of whether the verdict form error warranted reversal. *Jennings v. State*, 302 S.W.3d 306, 311 (Tex.Crim.App.2010). Relying on this case, LePage argues that error occurred when the jury did not receive the correct verdict form for the lesser included offense. The People respond that the *Jennings* standard applies here; specifically, reversal is only warranted if "egregious harm" resulted from the verdict form error. *Id.* Applying that reasoning to the case here, the People argue that reversal would be improper because the incorrect verdict form did not result in plain error. We agree with the People that *Jennings* is distinguishable. Here, unlike in *Jennings*, LePage has not shown that the omission of the correct verdict form resulted in egregious error, when the jurors were properly instructed regarding the charged offenses.

### 3. Analysis

It is undisputed that the trial court properly instructed the jury. The record shows that the trial court orally instructed the jury on the charged offense of second degree assault and the lesser included offense of obstruction of a peace officer. Also, the trial court read aloud to the jury the two verdict forms corresponding to each offense: one verdict form for second degree assault and another form for obstruction of a peace officer. Further, in his closing argument, the prosecutor explained to the jury the elements of the lesser included offense and argued that LePage's actions did not qualify as obstruction of a peace officer. Finally, the jury instructions correctly stated the elements of the charged offense and the lesser included offense. Specifically, Instruction No. 13 instructed the jury:

> If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged if the evidence is sufficient to establish his guilt of the lesser offense beyond a reasonable doubt.

The instruction further stated that "the offense of Assault in the Second Degree, as charged in the information in this case necessarily includes the lesser offense of Obstruc-

tion of a Peace Officer." As a result, the jury received accurate instructions regarding LePage's charged offense and the lesser included offense, as well as its choices of finding LePage guilty or not guilty of those offenses.

Unlike in *Pena* or *Jones*, the trial court here correctly instructed the jury on the charged offense of second degree assault and the lesser included offense of obstruction of a peace officer. Despite the jury's receiving an erroneous verdict form concerning third degree assault, that error was not plain in light of the correct written and oral instructions given to the jury. Had the jurors agreed to convict LePage of obstruction of a peace officer, they knew they could have asked the trial court about the verdict form for that offense, since they asked the trial court another question during their deliberations. Thus, the error in the second verdict form did not so undermine the fundamental fairness of LePage's trial as to cast serious doubt on the reliability of the judgment of conviction. *See James*, 40 P.3d at 46.

We also conclude the error was not obvious. Even if we assume the error was "obvious" to the jurors—and the record does not show that it was—the error was not obvious to the trial court or trial counsel.

Under these circumstances, we conclude there is no reasonable possibility that the erroneous verdict form contributed to LePage's conviction on the greater offense. *Id.* Accordingly, the trial court did not commit plain error when it gave an incorrect second verdict form to the jury.

### III. Prospective Juror

LePage contends that the trial court committed reversible error when it denied a challenge for cause to a prospective juror who believed that LePage should testify at his trial. We perceive no error.

We review a trial court's ruling on a challenge for cause to a prospective juror for an abuse of discretion. *Carrillo. v. People*, 974 P.2d 478, 485 (Colo.1999). A reviewing court gives great deference to the trial court's handling of challenges for cause, because such decisions depend on assessing the juror's credibility, demeanor, and sincerity in explaining his or her state of mind. *Morrison v. People*, 19 P.3d 668, 672 (Colo. 2000). A trial court has a unique role and perspective in evaluating the demeanor and body language of live witnesses. *Carrillo*, 974 P.2d at 486. "A trial court is in a superior position to evaluate these factors than a reviewing court, which has access only to a cold record for its determination." *Morrison*, 19 P.3d at 672.

The Due Process Clauses of the United States and Colorado Constitutions guarantee a criminal defendant the right to a fair trial. *Id.* An impartial jury is a fundamental element of the constitutional right to a fair trial. *Id.* (citing *People v. Rhodus*, 870 P.2d 470, 473 (Colo.1994)). A trial court violates a defendant's right to an impartial jury if it fails to remove a juror biased against the defendant. *Id.* (citing *Nailor v. People*, 200 Colo. 30, 32, 612 P.2d 79, 80 (1980)). "A trial court must grant a challenge for cause if a prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions." *Id.*

A trial court may properly consider "a prospective juror's assurance that he or she can fairly and impartially serve on the case." *People v. Drake*, 748 P.2d 1237, 1243 (Colo.1988). A court errs only when "a potential juror's statements compel the inference that he or she cannot decide crucial issues fairly" and there is no "rehabilitative questioning or other counter-balancing information." *People v. Merrow*, 181 P.3d 319, 321 (Colo.App.2007). Where a juror "repeatedly demonstrated that he understood that the defendant had a right not to testify and that if the defendant chose not to testify, he was not to consider that fact during deliberation," the supreme court found that the prospective juror "did not have a state of mind evincing enmity or bias against the defendant." *People v. Vecchiarelli–McLaughlin*, 984 P.2d 72, 76 (Colo.1999). Because the prospective juror confirmed that "he would not use the defendant's decision not to testify as evidence of his guilt," the

supreme court deferred to the trial court's discretion with respect to the defendant's denied challenge for cause. *Id.*

During voir dire, Juror M. stated, "I'd like to hear from the defendant, his side of the story." Regarding LePage's right not to testify, defense counsel asked Juror M., "Would you hold that against Mr. LePage just even a little bit?" and Juror M. answered, "I think I would."

Here, in contrast to *Merrow,* the prosecutor rehabilitated Juror M. during voir dire. The prosecutor asked Juror M., "[D]o you feel that you could render a fair and impartial verdict?" and Juror M. answered, "Yeah, I think I could." The prosecutor then asked, "You are not going to try and assume something simply based on silence?" and Juror M. responded, "I would go with the evidence, you know, what's going to be presented." Finally, the trial court informed Juror M., "LePage doesn't have to present any evidence at all. Do you understand that?" and "Do you feel you could follow that instruction?" to which Juror M. twice answered, "Yes." When asked, "[S]o if [LePage] didn't testify, you would not hold that against him?" Juror M. answered, "No."

Relying on *Morgan v. People,* 624 P.2d 1331, 1332 (Colo.1981), LePage argues that "a prospective juror should be excused if 'it appears doubtful' that he will be governed by the instructions of the court as to the law of the case." In that case, however, the juror in question repeatedly indicated that he would have difficulty applying the principle that the burden of proof rests solely on the prosecution to establish the accused's guilt. *Id.* Further, the supreme court observed that there was no dispute that the juror doubted his ability or willingness to apply the law. *Id.*

*Morgan* is distinguishable from the present case. In *Morgan,* the prospective juror continued to display "persistent doubts" despite efforts by the court to rehabilitate him, but here Juror M. repeatedly demonstrated that he understood that LePage had a right not to testify and that if LePage chose not to testify, he could not consider that fact during deliberation. Juror M. stated his intent not to weigh LePage's decision not to testify as

evidence of his guilt. *See Vecchiarelli–McLaughlin,* 984 P.2d at 76. Accordingly, the trial court did not abuse its discretion when it denied LePage's challenge for cause.

## IV. Habitual Criminal Adjudication

LePage contends that the trial court erred when the trial judge, rather than a jury, adjudicated him a habitual offender. We conclude that there is no constitutional right to a jury trial on habitual offender charges, and therefore we discern no error.

LePage did not raise the issue of his adjudication as a habitual criminal in the trial court. Therefore, we review this issue on appeal for plain error. *People v. Banark,* 155 P.3d 609, 611 (Colo.App.2007). Plain error is error that is both "obvious and substantial." *People v. Miller,* 113 P.3d 743, 750 (Colo.2005). We will not vacate a sentence for plain error unless the error so undermined the fundamental fairness of the sentencing proceeding as to cast serious doubt on the reliability of the sentence. *Id.*

There is no right to a jury determination of habitual criminal charges. *People v. Canody,* 166 P.3d 218, 221 (Colo.App.2007). Under section 18–1.3–803, C.R.S.2010, a court shall conduct a separate sentencing hearing to determine whether the defendant has previous felony convictions, and the hearing shall be conducted by the judge who presided at trial or before whom the guilty plea was entered.

The Supreme Court held in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and reiterated in *Blakely v. Washington,* 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Decisions from this court have relied on *Apprendi*'s "prior conviction" exception in ruling that habitual criminality may be constitutionally adjudicated by a judge and not a jury. *People v. Nunn,* 148 P.3d 222, 225 (Colo.App. 2006) (citing *People v. Benzor,* 100 P.3d 542 (Colo.App.2004); *People v. Gilmore,* 97 P.3d

123 (Colo.App.2003); and *People v. Carrasco,* 85 P.3d 580 (Colo.App.2003)). The Colorado Supreme Court has acknowledged that there is "some doubt about the continued vitality of the prior conviction exception," but has concluded that the exception "remains valid after *Blakely.*" *Nunn,* 148 P.3d at 225 (quoting *Lopez v. People,* 113 P.3d 713, 723 (Colo. 2005)).

Because *Lopez* remains valid precedent, we necessarily reject LePage's contention of reversible error, and may not reach a contrary conclusion here. Accordingly, we conclude that the trial court did not err when the judge and not the jury adjudicated LePage a habitual offender.

The judgment is affirmed.

Judge PLANK concurs.*

Judge GABRIEL dissents.

Judge GABRIEL dissenting.

I agree with the majority that the record establishes that the trial court did not provide the jury with a verdict form for the obstruction of a peace officer charge but did provide a verdict form for third degree assault, even though the court agreed to charge the former but not the latter as a lesser included offense of second degree assault. In the circumstances presented here, however, I cannot agree with my colleagues that there is no reasonable possibility that the erroneous verdict forms contributed to defendant's conviction of second degree assault. Accordingly, I respectfully dissent.

### I. Standard of Review

As an initial matter, I question whether plain error review is the appropriate standard here. Defense counsel apparently was unaware of the error regarding the verdict forms until after LePage's trial was over. Accordingly, it is not clear to me that counsel could have objected during the trial, which would militate against plain error review. *See, e.g., United States v. Warden,* 291 F.3d 363, 365 n. 1 (5th Cir.2002) (holding that plain error standard was inapplicable to a challenge to the imposition of certain special sentencing conditions, which challenge the defendant made for the first time on appeal, because the defendant had been given no opportunity to object or comment on the conditions at issue before the court imposed them). Nonetheless, the parties here agree that we should review for plain error, and, for present purposes, I will do so as well, because I would reverse even under that higher standard.

As the majority states, plain error is error that is obvious and substantial and that so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Lehnert v. People,* 244 P.3d 1180, 1185 (Colo.2010); *People v. James,* 40 P.3d 36, 46 (Colo.App.2001). "Under this standard, the defendant must demonstrate that the error complained of affected a substantial right and that the record reveals a reasonable possibility that the error contributed to [his or] her conviction." *Lehnert,* 244 P.3d at 1185; *James,* 40 P.3d at 46.

### II. Discussion

In my view, the trial court's error in failing to provide the jury with a verdict form on a lesser included offense that was charged and to which the parties had agreed, and in submitting, instead, a form for a lesser included offense that was not at issue, was obvious and substantial. Moreover, this error undermined the fundamental fairness of LePage's trial and establishes, at a minimum, a reasonable possibility that the error contributed to LePage's conviction of second degree assault.

At oral argument, all parties agreed that because the jury was given no verdict form for the obstruction of a peace officer charge, the jury, at least as a "technical" matter, could not enter a verdict on that charge. Neither the parties nor the majority has cited a single published decision from any court, and I have not found one, in which a court has upheld a verdict in a criminal case on such facts.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

The civil cases on which the majority relies are distinguishable. In each, the jury was given a verdict form that allowed it to enter judgment on the claim at issue, there was a technical deficiency in the form of the verdict, and the deficiency was harmless. *See, e.g., Bohrer v. DeHart,* 961 P.2d 472, 476–78 (Colo.1998) (although special verdict form neglected to require the jury to decide explicitly the total amount of the plaintiff's damages, the percentage of fault of each party, and the damages caused by each party, as required by statute, the error was harmless because the jury was instructed properly, the verdict forms showed that the jury followed the instructions, and the missing computations could easily be determined by looking at the face of the forms); *Hock v. New York Life Ins. Co.,* 876 P.2d 1242, 1259 (Colo.1994) (although verdict form would have allowed jury to find both a bad faith breach of contract and rescission of that same contract, which would have been inconsistent, any error was harmless because the jury did not actually reach an inconsistent verdict, and the verdict form, on its face, showed that the jury followed the court's instructions); *Technical Computer Servs., Inc. v. Buckley,* 844 P.2d 1249, 1253 (Colo.App.1992) (although verdict form for Wage Act claim referred to "damages" rather than unpaid wages, the alleged error was "mere semantics" and thus not grounds for reversal).

The majority's reliance on civil cases to support its conclusion of no plain error in this criminal case strikes me as dubious, given the limited applicability of the plain error doctrine in civil cases. *See Harris Group, Inc. v. Robinson,* 209 P.3d 1188, 1195 (Colo.App.2009) (noting that the circumstances justifying the application of the plain error doctrine in civil cases are rare). In any event, none of these cases involved a factual scenario like that presented here, where the jury was not given a verdict form to decide a claim that was presented to it. I am, however, aware of at least one recent civil case in which that did occur, and in that case, the court reversed, finding that the error was not harmless. *See Nash v. Lewis,* 365 Fed.Appx. 48, 52 (9th Cir.2010) (absence of a place on the verdict form at which the jury could have determined liability on plaintiff's false imprisonment claim was not harmless error, because the court could not conclude that the jury would necessarily have rejected that claim had the verdict form given it a place to decide the question).

The criminal cases on which the majority relies are likewise distinguishable. In *Morris v. State,* 658 So.2d 155, 156 (Fla.Dist.Ct. App.1995), the verdict form given to the jury failed to include an option to find the defendant guilty of a lesser included offense, but, unlike the present case, the defendant was given the opportunity to review the form before it went to the jury and not only failed to object but also affirmatively expressed satisfaction with the form. On these facts, the court concluded that defendant had waived any objection and that any error was invited. *Id.* No one asserts any issue of waiver or invited error in the present case, nor could anyone reasonably do so. The verdict forms that the court and the parties approved were not the forms that were given to the jury.

In *Delvalle v. State,* 653 So.2d 1078, 1079 (Fla.Dist.Ct.App.1995), the jury was given a verdict form that contained numerous lesser included offenses. One of those lesser included offenses, however, contained what the court described as a "typographical omission" (the offense was listed as "First Degree Murder Without a Firearm" but should have read, "Attempted First Degree Murder Without a Firearm"). *Id.* As in *Morris,* the defendant had expressly approved this verdict form. *Id.* On these facts, the court concluded that any error was invited and, in any event, that it was harmless, because there was no evidence that would have supported a finding by a reasonable jury that no firearm was used. *Id.* Here, in contrast, there was no issue of invited error, and it is undisputed that the evidence would have supported a verdict of obstruction of a peace officer.

Finally, in *King v. State,* 178 Ga.App. 343, 343 S.E.2d 401, 403 (1986), the jury was given verdict forms for several lesser included offenses. After the jury began deliberating, the defendant asked the court to provide the jury with one additional form, on a

charge about which the jury apparently had been instructed. *Id.* The trial court denied the defendant's request, and the appellate court affirmed, concluding that the failure to provide the additional form was harmless error because (1) the defendant was not entitled to the lesser included instruction on the additional charge in the first place, and (2) the jury clearly intended to find the defendant guilty of the greater offense, having rejected numerous other lesser offenses. *Id.* Here, unlike in *King,* it is undisputed that LePage was entitled to the instruction on the lesser included offense at issue, and the jury properly could have found him guilty of that charge. Moreover, unlike in *King,* the jury here was deprived of the opportunity to find LePage guilty of *any* lesser included offense.

Accordingly, in my view, the case law on which the majority relies does not support its conclusion.

I likewise disagree with the majority's implicit reliance on the facts that the jury failed to ask the court for a verdict form for the lesser included offense and failed to inquire about the verdict form for third degree assault, on which it was not instructed. The majority suggests that the jury's failure to do so shows that the jury was not confused and that it intended to reach the verdict that it did after appropriate consideration. I respectfully believe that such a conclusion is speculative and insufficient to support a determination that the jury intended to reject a finding of guilt on a lesser included offense for which it was given no verdict form. Human nature being what it is, there are innumerable reasons why the jurors might not have asked about the verdict form. As the majority suggests, the jurors may not have done so because they were not, in fact, confused and intended to do what they did. It is equally likely, however, that the jurors were confused by the inconsistency between the instructions and the verdict forms but feared that asking about the verdict forms might make them look foolish, especially given their likely assumption that the court would have provided them with the correct forms. In any event, I do not agree that it is appropriate to place on jurors the burden of ensuring that the jury instructions and verdict forms are correct, and neither the parties nor the majority cites any authority indicating that jurors have that burden.

I likewise am unpersuaded by the majority's repeated reliance on the fact that the instructions were correct and that there was no evidence that the jurors failed to consider the obstruction of a peace officer charge. Although the instructions may well have been correct, that does not alter the fact that the jury was given no mechanism by which to find LePage guilty of the lesser included offense at issue. Moreover, for two reasons, I do not agree with the majority that our decision may be based on a lack of evidence that the jurors failed to consider the obstruction of a peace officer charge. First, because inquiry into jury deliberations is generally prohibited, *see* CRE 606(b), it is likely to be a rare case in which a defendant could develop or cite to such evidence. Second, although, as the majority notes, we have no evidence that the jurors did not consider the obstruction charge, we likewise have no evidence that they did. Indeed, if the jurors began their discussions by looking at the verdict forms that they needed to complete, which would not have been an unreasonable approach, then they might not have seen a need to discuss the obstruction charge. In any event, I do not believe that it is appropriate for us to speculate on this point.

Finally, I do not believe that the evidence was so overwhelming as to have dictated a conviction on the greater charge. When the court chose to present the obstruction charge to the jury, it necessarily concluded that a reasonable jury could have acquitted LePage of second degree assault and convicted him of obstruction of a peace officer. *See People v. Brown,* 218 P.3d 733, 736 (Colo.App.2009) (noting that a defendant is entitled to a lesser included offense instruction if there is a rational basis in the evidence to support a verdict acquitting him or her of a greater offense and convicting him or her of the lesser offense), *aff'd,* 239 P.3d 764 (Colo. 2010). Where, as here, the court correctly determined that a reasonable jury could have convicted on the obstruction charge, I am not convinced that the jurors would not have done so had their actual options been made clear to them, and, again, I believe that it would be speculative to conclude otherwise.

### III. Conclusion

I do not believe that anyone would deny that LePage was entitled to a jury that was empowered to decide that he was guilty of the lesser included charge of obstruction of a peace officer, as opposed to the greater charge of second degree assault. In my view, the trial court's failure to provide the jury with a verdict form for the obstruction charge, coupled with the provision of a verdict form for a lesser included offense that was not before the jury, at the very least impaired the jury's ability to decide whether LePage was guilty of obstruction of a peace officer. Indeed, the only charge on which the jury was instructed and for which it had a verdict form was second degree assault. Moreover, the court's error, which I view as obvious and substantial, has left us to speculate as to whether the jury was confused, what the jury may have considered, and what the jury might have done had it received the instructions and verdict forms to which the court and the parties had agreed. On these facts, I cannot agree that there is no reasonable possibility that the erroneous verdict forms contributed to defendant's conviction of second degree assault. To the contrary, I believe that these facts establish a serious doubt as to the reliability of LePage's conviction. Accordingly, I would conclude that the failure to provide the correct verdict forms was plain error, and I would reverse LePage's conviction and remand for a new trial.